J-A22007-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: C.L.Z, A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: S.A.S., MOTHER | : | |
| | : | No. 650 MDA 2021 |

Appeal from the Decree Entered May 3, 2021
In the Court of Common Pleas of Lancaster County Orphans' Court at
No(s): 1888 of 2020

| | | |
|---|---|---|
| IN THE INTEREST OF: M.J.Z., JR., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| APPEAL OF: S.A.S., MOTHER | : | |
| | : | No. 651 MDA 2021 |

Appeal from the Decree Entered May 3, 2021
In the Court of Common Pleas of Lancaster County Orphans' Court at
No(s): 1889 of 2020

BEFORE:  BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY BOWES, J.:　　　　　　**FILED: JANUARY 3, 2022**

S.A.S. ("Mother") appeals from the decree entered on May 3, 2021, which terminated her parental rights to her children, C.L.Z., a female born in September 2013, and M.J.Z., Jr., a male born in November 2015.  We affirm.[1]

---

[1] The orphans' court also terminated the parental rights of the birth father, M.J.Z., Sr., whose appeal is docketed at 678 and 679 MDA 2021.  We address that appeal in a separate memorandum.

We glean the facts and procedural history of this case from the certified record. In October 2018, the Lancaster County Children and Youth Social Service Agency ("the Agency") obtained custody of C.L.Z. and M.J.Z., Jr., and placed them in foster care. N.T., 4/12/21, at 18. The Agency obtained custody because M.J.Z., Sr. ("Father"), sexually abused Mother's older daughter, who is not involved in this appeal, and Mother denied the abuse occurred.[2] *Id*. at 11, 51-52. In addition, there was an incident of domestic violence in August 2018, during which both Mother and Father were intoxicated. N.T., 10/26/18, at 15-16. Subsequent drug screens revealed that Mother and Father used marijuana, and the Agency was concerned that Mother had untreated mental health problems. *Id*. at 9-11; N.T., 4/12/21, at 18, 29.

On November 29, 2018, the juvenile court adjudicated C.L.Z. and M.J.Z., Jr., dependent. The primary permanency goal for the children was to return to the parents, with a concurrent permanency goal of adoption. The Agency prepared goals to assist Mother in achieving reunification with the children. Those goals included addressing her mental health, substance abuse, and domestic violence problems, as well as understanding sexual victimization. N.T., 4/12/21, at 5-6. The record demonstrates that Mother

---

[2] It appears that Father was originally alleged to have sexually abused two of Mother's older daughters. N.T., 5/26/2018, at 5-8. Later testimony suggests he pled guilty to charges relating to sexual abuse of one daughter and not the other. *See* N.T., 4/12/21, at 11, 22 (the Agency caseworker describing Father as "a man that already victimized one of [Mother's] children.").

failed to attain her goals.  *Id*. at 5-6, 10-11, 17.  Moreover, she lacked stable housing and relied on her sister and ex-husband for a place to stay.  *Id*. at 13, 43-44.

On October 2, 2020, the Agency filed a petition to terminate Mother's parental rights to C.L.Z. and M.J.Z., Jr., pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).  During the ensuing evidentiary hearing, the orphans' court heard testimony from Zionne West, the Agency's caseworker, S.C., the foster father of C.L.Z. and M.J.Z., Jr., Father, and Mother.[3]  On May 3, 2021, the orphans' court entered a decree terminating Mother's parental rights to C.L.Z. and M.J.Z., Jr.  Mother timely filed separate notices of appeal along with concise statements of errors complained of on appeal.[4]

Mother raises the following claims for our review:

_____

[3] Kathleen E. Holmes, Esquire, identified in the record as the guardian *ad litem* ("GAL"), represented the legal interest and best interests of both children during the termination hearing.  The GAL expressed support for the termination of Mother's parental rights as that result was consistent with the children's "desire . . . to continue to live at their resource home forever."  N.T., 4/12/21, at 68-69.  The orphans' court did not find a conflict between the children's legal interest and best interests.

[4] The orphans' court incorporated the juvenile court records from the dependency proceedings of C.L.Z. and M.J.Z., Jr., into the termination proceedings.  N.T., 3/15/21, at 2-3; N.T., 4/12/21, at 4.  As the juvenile court records did not appear in the certified record transmitted to this Court, we entered *per curiam* orders on November 15, 2021, directing the clerk of courts to transmit the juvenile court records for our review.  We received a supplemental record on November 18, 2021.  While the supplemental record we received is incomplete, we are confident that the certified record on appeal is sufficient to conduct appellate review, and we do not wish to further delay resolution of this Children's Fast Track appeal.

I. Did the [orphans' c]ourt err and abuse its discretion in terminating the rights of . . . Mother, as termination of Mother's rights is not in the best interests of the child and will not promote the physical, mental, or emotional well-being of the child, as the interaction between Mother and the child during visits demonstrated that a bond exists between the Appellant Mother and the child, and the reasons for the termination of Mother's parental rights were due to environmental factors?

II. Did the [orphans' c]ourt err in finding that the Agency proved by a clear and convincing standard that Mother demonstrated a settled purpose to relinquish her parental rights to the child or refused or failed to perform parental duties for the six . . . month period prior to filing of the petition for termination of parental rights?

III. Did the [orphans' c]ourt err in finding that the Agency proved by a clear and convincing standard that the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by Mother and that Mother's parental rights should be terminated under [§] 2511(a)(2)? . . .

IV. Did the [orphans' c]ourt err in finding that the Agency proved by a clear and convincing standard that the conditions and causes of the placement of the child cannot or will not be remedied by Mother, that termination would serve the best needs and welfare of the child, and that Mother's parental rights should be terminated under [§] 2511(a)(5)?

V. Did the [orphans' c]ourt err in finding that the Agency proved by a clear and convincing standard that the conditions and causes of the placement of the child still exist, that termination would serve the best needs and welfare of the child, and that Mother's parental rights should be terminated under [§] 2511(a)(8)?

Mother's brief at 8-9.[5]

_____

[5] Mother listed six issues in her statement of questions involved. We omitted the final issue because Mother's brief states her intention to withdraw it. *See* Mother's brief at 9, 33.

Our standard of review requires us to accept the findings of fact and credibility determinations of the orphans' court if the record supports them. *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). If the record supports the court's findings, we must determine whether the court committed an error of law or abused its discretion. *Id*. An abuse of discretion does not occur merely because the record could support a different result. *Id*. We may find an abuse of discretion "'only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.'" *Id*.

Pennsylvania's Adoption Act governs involuntary termination of parental rights proceedings. *See* 23 Pa.C.S. § 2101-2938. It provides for a bifurcated analysis, in which the orphans' court focuses initially on the parent's conduct pursuant to § 2511(a). *In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007). If the court finds that the party seeking termination has established statutory grounds pursuant to § 2511(a), it must then turn its attention to § 2511(b), which focuses on the child's needs and welfare. *Id*. A critical aspect of § 2511(b) is discerning whether the child has an emotional bond with his or her parent and what effect severing that bond may have on the child. *Id*. The party seeking termination bears the burden of proof under both § 2511(a) and (b) by clear and convincing evidence. *In re C.P.*, 901 A.2d 516, 520 (Pa.Super. 2006)).

As noted, the orphans' court terminated Mother's parental rights to C.L.Z. and M.J.Z., Jr., pursuant to § 2511(a)(1), (2), (5), (8), and (b). We need only agree with the court as to any one subsection of § 2511(a), in

addition to § 2511(b), to affirm. ***In re B.L.W.***, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*), *appeal denied*, 863 A.2d 1141 (Pa. 2004). We analyze the court's decision pursuant to § 2511(a)(2) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . . .
>
> > (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> . . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(a)(2), (b).

We begin by considering whether the orphans' court erred or abused its discretion in terminating Mother's parental rights pursuant to § 2511(a)(2).[6] To satisfy the requirements of § 2511(a)(2), the party requesting termination must prove that (1) the parent has exhibited repeated and continued incapacity, abuse, neglect, or refusal, (2) the incapacity, abuse, neglect, or refusal has caused the child to be without essential parental care, control, or subsistence, and (3) the parent cannot or will not remedy the causes of the incapacity, abuse, neglect, or refusal. *In the Interest of D.R.-W.*, 227 A.3d 905, 912 (Pa.Super. 2020) (quoting *In re Adoption of M.E.P.*, 825 A.2d 1266, 1272 (Pa.Super. 2003)). Importantly, § 2511(a)(2) does not apply solely to affirmative misconduct but also permits termination based on a parent's incapacity. *In re S.C.*, 247 A.3d 1097, 1104 (Pa.Super. 2021).

Mother challenges the decision of the orphans' court as to § 2511(a)(2) only briefly, asserting that her life became "uprooted" when this case began, and that she faced obstacles as she worked to achieve reunification. Mother's brief at 27. She requests additional time to restart mental health treatment, obtain housing, and maintain employment. She contends that her request is "reasonable and doable and will eliminate any concerns as to the conditions

---

[6] Mother's counsel seemingly conceded that the Agency met its burden under § 2511(a) in his closing argument and asserted that the bond Mother shared with her children should preclude termination of her parental rights pursuant to § 2511(b). N.T., 4/12/21, at 70-71. However, since Mother challenges § 2511(a) in her concise statements and brief, we address the merits of the current contention.

that led to the placement of her children." *Id*. Relatedly, Mother maintains as part of her § 2511(b) argument that the court violated the Adoption Act by terminating her rights based on environmental factors, such as "marginal income, difficulty in obtaining housing, and expensive health care coverage." *Id*. at 22. She relies on the portion of § 2511(b) providing that courts shall not terminate "solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent." *Id.*; 23 Pa.C.S. § 2511(b).

The orphans' court concluded that Mother was incapable of parenting C.L.Z. and M.J.Z., Jr., because she lacked income and appropriate housing, in addition to necessary parenting education. Orphans' Court Opinion, 6/9/21, at 15. The court noted that it did "not bode well" that, after C.L.Z. and M.J.Z., Jr., had remained in foster care for an extended period, "Mother quit her job, is living with her ex-husband in Philadelphia, and is not addressing her severe mental health issues." *Id*. The court rejected Mother's request for additional time, expressing skepticism that she would do anything other than "continue to make excuses" for her failure to comply with her goals. *Id*.

As explained *supra*, C.L.Z. and M.J.Z., Jr., entered foster care in October 2018 because of Father's sexual abuse of Mother's older daughter, Mother's need for mental health treatment, substance abuse, and problems with domestic violence. N.T., 5/26/2018, at 9-11, 15-16; N.T., 4/12/21, at 11, 18, 29, 51-52. The Agency prepared goals to assist Mother in reunifying with

C.L.Z. and M.J.Z., Jr., but Mother failed to achieve those goals or make satisfactory progress toward reunification. N.T., 4/12/21, at 5-6. By the time of the termination hearing on April 12, 2021, C.L.Z. and M.J.Z., Jr., had remained in foster care for approximately thirty months.

Zionne West, who has been assigned to the family since August 2020, testified that Mother was not engaged in mental health or substance abuse treatment at the time of the hearing and had not addressed the Agency's mental health or substance abuse concerns. *Id*. at 5-6. Further, Mother had not completed services for domestic violence. *Id*. at 17. Ms. West reported that Mother alternated between living in Lancaster County and Philadelphia "several times" during this case before finally residing in Philadelphia. *Id*. at 10. While Mother participated in a mental health evaluation and treatment in Lancaster County, she stopped participating in those services after settling in Philadelphia. *Id*. at 5-6, 10, 13, 17-18.

Similarly, although Mother also joined a non-offending parent program in Lancaster County, she was dismissed from the program and asked to address her mental health needs before returning. *Id*. at 10-11. The program was concerned with Mother's "mental health stability," as she was "incredibly emotional and just wasn't able to focus and receive the information as it was being delivered." *Id*. at 11. As to why the Agency believed a non-offending parent program was necessary, Ms. West explained that Mother did not initially believe that Father abused her older daughter and appeared to

maintain contact with Father after his incarceration. *Id*. at 11, 21-22. While Ms. West was not aware of Mother having any further contact with Father at the time of the hearing, she expressed concern over Mother's continued doubt about the sexual abuse, noting that Mother still did not "fully seem to acknowledge and accept the allegations and how they occurred[.]" *Id*. at 11-13.

In addition to discussing Mother's noncompliance with services, Ms. West testified that Mother lacked stable housing and employment. Although Mother ultimately settled in Philadelphia, Ms. West explained that Mother did not have her own residence and was "back and forth between her ex-husband's mother's home as well as her sister's home[.]" *Id*. at 10, 13. Further, while Ms. West noted Mother had been employed periodically throughout the case, Mother testified that she quit her most recent job "last month." *Id*. at 9, 44-45. Mother stated that she initially provided two-week notice, but abruptly quit due to a dispute with her manager. *Id*. at 44-45.

Thus, while Mother proposes that she would be able to comply with her reunification goals if given additional time, the record demonstrates that she has had ample time to comply already and failed to do so. After approximately thirty months of making little, if any, progress, it was well within the discretion of the orphans' court to reject Mother's request as disingenuous. *See In re S.C.*, *supra* at 1105 (quoting *In re Z.P.*, 994 A.2d 1108, 1118 (Pa.Super. 2010) ("A parent's vow to cooperate, after a long period of uncooperativeness

regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous.").

The record also belies Mother's claim that the orphans' court terminated her parental rights based upon impermissible environmental factors. As quoted above, § 2511(b) directs that courts may not terminate parental rights "**solely** on the basis of environmental factors . . . **if found to be beyond the control of the parent**." 23 Pa.C.S. § 2511(b) (emphasis added). Mother suggests the court terminated her parental rights based solely on environmental factors because it emphasized her lack of housing and employment, and because other factors present in the case that were not overtly "environmental," such as her failure to obtain mental health treatment, resulted from her lack of health insurance, which was "environmental." **See** Mother's brief at 22. Accepting Mother's characterization of the proposed environmental factors as true, it remains evident from the certified record that the court did not believe Mother's limitations were beyond her control. Instead, the court determined that Mother was merely "mak[ing] excuses" for her noncompliance. Orphans' Court Opinion, 6/9/21, at 15.

Significantly, Ms. West testified the Agency made repeated attempts to assist Mother in obtaining health insurance and provided her a list of service providers that offered "sliding scale fees[.]" **Id**. at 7-8. Mother failed to utilize these opportunities and stated to Ms. West that she "just doesn't have the time . . . or she just hasn't remembered to submit the application." **Id**. at 9.

- 11 -

Mother testified that she had been receiving insurance through a public assistance program but then lost the insurance because "they found out that I was working[.]" *Id*. at 46-47. Mother also testified, notably, that she could have obtained insurance through one or more of her previous employers if she had stayed on the job more than a year. *Id.* at 49. She apparently never achieved that benchmark. Even more telling, Mother acknowledged that she received information regarding service providers offering sliding scale fees but conceded, "with all the chaos I was overwhelmed with everything that was going on, and honestly, I just didn't get it done. I mean, I have no excuse for that." *Id*. at 48.

Based on the forgoing evidence, we conclude that the record supports the determination that Mother's incapacity, abuse, neglect, or refusal has deprived C.L.Z. and M.J.Z., Jr., of essential parental care, control or subsistence, and that Mother cannot or will not remedy the conditions and causes of her incapacity, abuse, neglect, or refusal. Thus, we discern no abuse of discretion or error of law in the orphans' court's decision to terminate Mother's parental rights to C.L.Z. and M.J.Z., Jr., pursuant to § 2511(a)(2).

We next consider whether the orphans' court committed an error of law or abuse of its discretion pursuant to § 2511(b), which Mother raises in her first claim. As explained above, § 2511(b) focuses on the needs and welfare of the child, which includes an analysis of any emotional bond the child may have with his or her parent and the effect severing the bond may have on the

child. **L.M.**, **supra** at 511. The fundamental questions when conducting this analysis are whether the bond is necessary and beneficial and whether severing it will cause the child extreme emotional consequences. **In re Adoption of J.N.M.**, 177 A.3d 937, 944 (Pa.Super. 2018), *appeal denied*, 183 A.3d 979 (Pa. 2018) (quoting **In re E.M.**, 620 A.2d 481, 484–85 (Pa. 1993)). It is important to recognize that the existence of a bond, while significant, is only one of many factors that courts should consider when addressing § 2511(b). **In re Adoption of C.D.R.**, 111 A.3d 1212, 1219 (Pa.Super. 2015) (quoting **In re N.A.M.,** 33 A.3d 95, 103 (Pa.Super. 2011)). Other factors include "the safety needs of the child, and . . . the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent." **Id**.

Mother contends that she shares a "vital" bond with C.L.Z. and M.J.Z., Jr., and directs this Court's attention to her own testimony during the hearing, as well as that of Ms. West. Mother's brief at 20-21. Mother maintains that the orphans' court decided to terminate parental rights despite the existence of this bond due in large part to its finding that she would not be able to bring C.L.Z. and M.J.Z., Jr., to their various therapy appointments. **Id**. at 20-21. She contends this finding lacks support in the record because "[n]owhere . . . is there an account as to which of these services require transportation by parents, resource or otherwise, and which services are directly supplied by the school." **Id**. at 21-22.

The orphans' court found Mother's testimony credible and concluded that she had a loving bond with C.L.Z. and M.J.Z., Jr. Orphans' Court Opinion, 6/9/21, at 18. Nonetheless, the court reasoned that Mother was incapable of providing C.L.Z. and M.J.Z., Jr., with the necessary permanence and stability that the analysis also requires. *Id*. at 18-19. The court noted that C.L.Z. and M.J.Z., Jr., receive therapy and expressed skepticism that Mother could attend to her children's needs if she could not address her own mental health. *Id.* at 18. Specifically, the court observed that C.L.Z. and M.J.Z., Jr., "each receive multiple types of therapy . . . [and] . . . Mother has not demonstrated the responsibility or capability to personally maintain [their] various appointments when she cannot care for her own mental health." *Id.* The court further found C.L.Z. and M.J.Z., Jr., had spent "nearly half of their lives" in their foster home[7] and shared a bond with the foster parents. *Id.* In reaching this conclusion, it relied on the representations of Attorney Holmes, the GAL, who expressed support for termination and reported the desires of both C.L.Z. and M.J.Z., Jr., to live permanently with the foster parents, who they call "Mommy Bec" and "Daddy Shawn." *Id*.

For the following reasons, we conclude that the orphans' court did not abuse its discretion or commit an error of law. First, although the record

---

[7] At the time of the hearing on April 12, 2021, C.L.Z. was just over seven-and-a-half years old, and M.J.Z., Jr., was just under five-and-a-half years old. They had lived in their foster home since December 2018, for a total of two years and four months. N.T., 4/12/21, at 16, 31.

supports the court's finding that Mother shares a loving bond with C.L.Z. and M.J.Z., Jr., Ms. West reported that Mother missed two recent visitations and appeared distracted during phone calls with C.L.Z. and M.J.Z., Jr., and prior virtual visitations. N.T., 4/12/21, at 12, 19-20. Furthermore, as noted *supra*, Mother's affection for her daughters did not preclude the orphans' court from terminating her parental rights. It was within the court's discretion to weigh the existence of the parent-child bond against other factors, including Mother's inability to provide C.L.Z. and M.J.Z., Jr., the permanence and stability they require, and the extensive time C.L.Z. and M.J.Z., Jr., have remained in their foster home. ***See C.D.R.***, ***supra*** at 1220 (affirming termination of the mother's parental rights despite the existence of a bond with her child and observing, "[c]learly, it would not be in [the c]hild's best interest for his life to remain on hold indefinitely in hopes that [the m]other will one day be able to act as his parent.").

Moreover, Mother misinterprets the concern that the orphans' court expressed regarding her inability to address the needs of C.L.Z. and M.J.Z., Jr., if they returned to her care. Contrary to Mother's argument, the court did not base its determination upon Mother's lack of transportation to take the children to therapy appointments, but rather, the Court was troubled by Mother's lack of motivation or capacity to ensure that the children received the required care. Indeed, in the approximately thirty months since C.L.Z. and M.J.Z., Jr. entered foster care, Mother had made little effort to address

her own mental health problems. Given that Mother had neglected her own needs for so long, it was reasonable for the court to infer that she would also neglect the needs of C.L.Z. and M.J.Z., Jr. As the certified record supports this inference, no basis exists to disturb the court's finding that termination of Mother's parental rights would best serve the developmental, physical, and emotional needs and welfare of C.L.Z. and M.J.Z., Jr.

For all the foregoing reasons, the orphans' court did not abuse its discretion or commit legal error by terminating Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(2) and (b).

Decree affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/03/2022